Original, }
·Oct. 1, 1934. }

JOSEPH A. COUTREMARSH *v.* HARRY B. METCALF & a.

*James A. Hanley,* by brief and orally, for the plaintiff.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the defendant Metcalf.

*Per Curiam.*

### FINDINGS OF FACT.

At the primary election held upon September 11, 1934, the plaintiff and the defendant Metcalf (hereinafter called the defendant) were opposing candidates for the Democratic nomination for the office of representative in congress for the second district of New Hampshire. The defendant received a majority of the votes cast at said election.

Prior to August 8, 1934, the defendant filed with the secretary of state his declaration of candidacy for said office, and on or about said date, received from the secretary of state an official acknowledgment of such filing, to which was appended a copy of the statutes relating to

political expenditures, advertising and contributions, *i.e.* Public Laws, chapter 34, as amended by Laws 1927, chapter 137. Accompanying this document was a form letter over the facsimile signature of the attorney-general, which read in part as follows: "To all candidates at the primary or general election for Councilor, State Senator, County Officer or Representatives: I wish to call to your attention that the law provides that if you expend more than Twenty-five Dollars ($25.00) in connection with your candidacy, you must file with the secretary of state and with the town or city clerk of your town or city, an itemized sworn statement of all your receipts or expenditures. Such return is to be filed within fifteen days after said primary or general election."

The defendant made a cursory examination of the statutory provisions accompanying the communication from the secretary of state, but had no actual knowledge of any requirement that a statement of expenditures be filed three days before the primary election until the day of the election, when he received notice to that effect from the chairman of the Democratic state committee. Up to that time he understood that the law required only one statement of expenditures to be filed within fifteen days after the election. This misunderstanding was induced, in a large measure, by the above letter of the attorney-general.

Acting in accordance with this understanding of the law, the defendant failed to publish or file with the secretary of state three days before said election a statement of his campaign expenditures incurred up to that time. Upon September 11, the day of the election, however, after receiving notice from the chairman of the state committee, he prepared such a statement and forwarded, by mail, to the secretary of state, two copies of the same, which were received in the office of the secretary of state upon September 12, 1934. This statement showed expenditures amounting to $130.75. Upon September 19, he filed a supplementary statement of expenditures in accordance with the statute.

The failure of the defendant to furnish a statement of his campaign expenditures three days before the date of the primary election, resulted from his mistake in regard to the requirements of the statute above set forth, and it is found that he had no intent to violate the law.

## CONCLUSIONS OF LAW.

Public Laws, chapter 34, section 20, provides that the state committee of every political party shall file, on the third day preceding

the election, with the secretary of state, an itemized statement of contributions and expenditures and publish the same in two daily newspapers. Also that within fifteen days after an election, it shall file another itemized statement "covering in like manner all receipts and expenditures subsequent to the first statement." Section 21 provides that "Every candidate at the primary or general election for governor, United States senator, or representative in congress shall file and publish sworn statements in like manner of all his receipts and expenditures." Section 22 dispenses with the requirement of publication by candidates provided that copies of the statements "for each candidate opposing the candidate so filing" are delivered to the secretary of state. The foregoing provisions plainly require that candidates for representative in congress shall file two statements of campaign expenditures, the first on the third day before the election, and the second within fifteen days after the election.

The statutes here involved are penal in their nature. They create and define criminal offenses unknown to the law before their enactment and prescribe penalties for the commission of such offenses. The section under which this proceeding is brought reads as follows:

"26. PENALTIES. Any person who violates the foregoing provisions of this subdivision shall be fined not more than five hundred nor less than one hundred dollars and imprisoned not less than thirty nor more than ninety days. Any person who alleges that any of the foregoing provisions of this subdivision relating to the primary have been violated may, not later than the fifth day of October following said primary, bring a proceeding in equity in the supreme court against the person alleged to have violated said provisions. To this proceeding the secretary of state shall be made a party defendant. The supreme court shall forthwith hear such proceeding and make final decision thereof, and if the court shall find that the defendant has violated any of such provisions, a decree shall be entered disqualifying the defendant from becoming a candidate at the ensuing election, and the vacancy thereby created shall be filled as provided by law. No candidate shall be entitled to the nomination or election until the sworn itemized statements required to be filed by him or in his behalf have been filed and published as hereinbefore required." Laws of 1927, c. 137, s. 6.

The procedure thus authorized, by which a private citizen may invoke the action of this court with reference to the imposition of a penalty for a criminal offense through the medium of a bill in equity, is highly anomalous and inappropriate. The defendant argues that

since the proceeding is required to be in equity, equitable principles must control the action of the court, and hence that the penalty of disqualification should not be inflicted unless an intentional violation of the law is proved. This argument carries the anomaly of the statute to its logical conclusion and might require serious consideration if other decisive factors in the case were not present.

The plaintiff contends that the statutes above referred to penalize acts and failures to act without regard to the intent of the actor, and hence that the defendant's failure to file a statement of his expenses within the time limited by law, *ipso facto* demands the imposition of the prescribed penalty.

Undoubtedly it is within the power of the legislature to declare an act criminal irrespective of the intent of the doer of the act (*State* v. *Cornish*, 66 N. H. 329; *State* v. *Ryan*, 70 N. H. 196) but the question whether criminal intent is a necessary element of a statutory crime is one of statutory construction. 8 R. C. L. Tit., Criminal Law, *s.* 12; 16 C. J. Tit., Criminal Law, *s.* 42. "Considering the nature of the offence, the purpose to be accomplished, the practical methods available for the enforcement of the law, and such other matters as throw light upon the meaning of the language, the question in interpreting a criminal statute is whether the intention of the Legislature was to make knowledge of the facts an essential element of the offence, or to put upon every one the burden of finding out whether his contemplated act is prohibited, and of refraining from it if it is." *Commonwealth* v. *Murphy*, 165 Mass. 66, 70; *Halsted* v. *State*, 41 N. J. L. 552.

In the present instance, language disclosing the intention of the legislature is found in other sections of the act, (P. L., *c.* 34, *ss.* 11, 12) which provide as follows:

"11. COMPLAINTS. Any person voted for at an election for any office, or any reputable voter, may make complaint in writing to the attorney-general of any violation of any of the provisions of this subdivision. All complaints so made shall be treated as confidential communications.

"12. PROSECUTION. Upon the receipt of any such complaint, if it shall appear that the act complained of was of a serious and deliberate nature, it shall be the duty of the attorney-general ... to investigate the complaint, and, ... prosecute to final judgment."

Since section 12 makes it the duty of the attorney-general to prosecute only when it appears that "the act complained of was of a serious and deliberate nature," it seems plain that the legislature did not intend that any person shall be subjected to a penalty for viola-

tion of this act unless an intent to violate the law is proved. The word "deliberate" permits of no other conclusion.

The plaintiff argues, however, that since section 11 refers to complaints for violation of "this subdivision," section 12 should be construed as referring only to illegal expenditures defined in the preceding sections of the act and as having no reference to a failure to publish or file the statements of campaign expenditures required by the subsequent sections of the same chapter. If the premises of this argument were conceded to be sound, the conclusion would not necessarily follow. The effect of section 12 as a criterion of the nature of the offenses defined in chapter 34 would not thereby be destroyed. Having provided that illegal expenditures need not be prosecuted unless "the act complained of was of a serious and deliberate nature," it is unlikely that the legislature would, in the same chapter, provide that the comparatively innocuous failure to publish the amount of legitimate expenditures should not only entail penalties of fine and imprisonment but the additional penalty of disqualification as a candidate, however innocent may have been the intent of the actor.

The plaintiff's argument fails, however, for another and more definite reason. The foregoing sections 11 and 12 had their origin in Laws of 1915, chapter 169, section 12, which provided as follows: "12. (a) Any person voted for at an election for any office, or any reputable voter, may make complaint in writing to the attorney-general of any violation of any of the provisions of this act. All complaints so made shall be treated as confidential communications. Upon the receipt of any such complaint, if it shall appear that the act complained of, if committed, was of a serious and deliberate nature, it shall be the duty of the attorney-general ... to investigate the complaint ... and prosecute the same to final judgment." This statute was entitled "An act to prevent corrupt practices at elections, and to regulate expenditures for political purposes and provide for the publicity thereof." Section 11 of that act has now become section 22, of chapter 34, of the Public Laws, which now permits the filing of copies with the secretary of state in lieu of the publication of campaign expenditures required by section 20. Section 13 of that act, which has now become section 10 of chapter 34 of the Public Laws, provided that every political committee shall have a treasurer and that "For any failure to make any statement of receipts and expenditures of the committee as required by law the treasurer shall be guilty."

It, therefore, appears that the act of 1915 dealt not only with illegal political expenditures or "corrupt practices" but with the requirement of publicity for campaign expenditures and it was made the duty of the attorney-general to prosecute "any violation of any of the provisions" of that act only in case it appeared to be "of a serious and deliberate nature." The requirement that the act complained of should be of a serious and deliberate nature applied not only to corrupt practices, but to a breach of the publicity provisions of the act. In chapter 34, of the Public Laws, the sections of the act of 1915 have been rearranged and consolidated with the provisions of Laws of 1911, chapter 101, but there is no convincing evidence of an intention on the part of the legislature to change the original meaning of section 12 of the Laws of 1915 as above explained. We, therefore, conclude that criminal intent is an essential element of all the offenses defined in chapter 34 of the Public Laws and that without such intent, no person is subject to a penalty for violation of the provisions of that chapter.

Confirmation of these views is found in the final sentence of section 26 above quoted which provides that "no candidate shall be entitled to the nomination or election until the sworn itemized statements required to be filed by him or in his behalf have been filed and published as hereinbefore required." This provision clearly indicates that failure to file the required statements at the times specified is not necessarily a cause for disqualification, and that if no intent to violate the statute is shown, the default may be cured by subsequent filing.

Since it has been found that the defendant herein was innocent of any criminal intent, the constitutional questions here involved do not require consideration and it follows that the bill in equity must be dismissed and it is so ordered.

*Bill dismissed.*

WOODBURY, J., was absent.

## MEMORANDUM.

On October 16, 1934, Mr. Justice Allen was appointed chief justice of this court.